

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. AP-77,043 & AP-77,044

### THE STATE OF TEXAS

### v.

### LARRY RAY SWEARINGEN, Appellee

### ON DIRECT APPEAL IN
### CAUSE NO. 99-11-06435-CR FROM THE 9TH DISTRICT COURT
### MONTGOMERY COUNTY

**ALCALA, J., filed a dissenting opinion.**

### DISSENTING OPINION

This is a close case with greatly important competing interests. On the one hand, this brutal crime against a young college student, Melissa Trotter, occurred almost twenty years ago, and the evidence establishing her killer's guilt should have been finally resolved by now. On the other hand, for about a decade, Larry Ray Swearingen, appellee, has been seeking DNA testing on items that he claims would exonerate him of this offense for which he was convicted. Swearingen's current motion includes first-time requests for DNA testing on hair evidence and the sexual assault evidence-collection kit from the victim (rape kit), which are by definition biological material under

the applicable statute. I conclude that, despite the volume of incriminating evidence of Swearingen's guilt, DNA testing on the hair evidence and the rape kit linking a different person to this offense would, by a preponderance of the evidence, show that Swearingen would not have been convicted. I, therefore, respectfully dissent from this Court's judgment that, for the third time in over a decade, denies Swearingen access to DNA testing under Chapter 64 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. arts. 64.01, 64.03. I would accordingly uphold the trial court's order granting DNA testing of these items. With respect to the other items, I concur in this Court's judgment denying the testing.

## I. Background

Since he was convicted and sentenced to death for the rape and murder of Melissa Trotter, Swearingen has filed multiple motions for DNA testing, each of which has been rejected by this Court.[1] Acknowledging that he filed a motion in 2004 that was denied by the trial court and later dismissed by this Court on appeal due to procedural default, I focus on his 2008 motion that this Court addressed in *Swearingen I*; his 2013 motion initially addressed in *Swearingen II*; and his supplement to the 2013 motion that was filed after our remand to the trial court in *Swearingen II*, which is the subject of this Court's instant opinion that I will refer to as *Swearingen III*.[2] At issue

---

[1]There is a disagreement about the number of Chapter 64 motions Swearingen has filed. By my reading of the record, Swearingen has filed three motions. The trial court denied his first motion, the 2004 motion, and this Court dismissed his appeal of the trial court's ruling based on procedural default. In *Swearingen I*, this Court addressed his second motion, the 2008 motion, and its supplement that had been filed by him. In *Swearingen II*, this Court addressed his third motion, the 2013 motion. Here, in *Swearingen III*, we again address his third motion and its supplement that appears here after our remand in *Swearingen II*.

[2]Swearingen filed a motion for DNA testing in 2004, which the trial court denied in 2005. Because he did not timely appeal the trial court's order, this Court rejected his appeal due to procedural default. *State v. Swearingen*, 189 S.W.3d 779 (Tex. Crim. App. 2006). This Court,

in this case are Swearingen's requests for DNA testing on (1) the ligature that was used to kill the victim, consisting of one half of a pair of pantyhose, (2) the other half of the pair of pantyhose found in Swearingen's trailer, (3) hairs found on and near the body, (4) the rape kit, (5) the fingernail scrapings, (6) the cigarette butts found near the victim's body, and (7) the victim's clothing. For consistency, I refer to these items using the above assigned numbers throughout the opinion.

**A. The 2008 Motion Discussed in *Swearingen I***

In May 2008, Swearingen filed a Chapter 64 motion for DNA testing, and he updated the motion in January 2009. After the trial court denied that motion, this Court affirmed the trial court's ruling. *Swearingen v. State*, 303 S.W.3d 728 (Tex. Crim. App. 2010) (*Swearingen I*). This motion requested the testing of materials that Swearingen had not sought to be tested previously: (1) the ligature; (5) the victim's fingernail scrapings, including (5-a) scrapings from under the left-hand fingernails that were shown to contain blood flakes and (5-b) other scrapings from under the left- and right-hand fingernails, consisting of a "black flaky matter" and traces of sand or gravel; (7) the victim's clothing, including scrapings from her ripped jeans; and (8) a foreign pubic hair that was recovered during the collection of the rape kit. *Id*. at 730.

The trial court denied the requests for DNA tests of (1) the ligature, (5-b) the other fingernail scrapings, and (7) the clothing because there had been no showing that these items contained biological material. *Id*. On appeal from the trial court's denial of the motion for DNA testing, this Court noted that the then-existing statute required a movant to show that each of these items actually contained biological material. *Id*. at 733. This Court held that, with respect to those items, "the record [was] void of any concrete evidence that biological material existed on the evidence sought

therefore, never reached the merits of his first motion for DNA testing.

to be tested." *Id*.

The trial court's order also denied testing of (5-a) the victim's left-hand fingernail scrapings that contained blood flakes. *Id*. at 735. In upholding the trial court's ruling as to this evidence, this Court observed that the blood flakes had already been tested, and the results of that testing had revealed a full male DNA profile that was inconsistent with the DNA profile of Swearingen, the complainant, or any other known DNA profile. *Id*. Although the initial test was not done with the most recent technique, this Court reasoned that Swearingen was not entitled to retesting of this evidence because the previous test had already produced accurate, probative results in the form of a full male DNA profile that had been submitted to CODIS without a match. *Id*. This Court, therefore, concluded that Swearingen had failed to show "a reasonable likelihood that results of re-testing would be more accurate or probative." *Id*.

The trial court additionally denied the request for testing of the foreign pubic hair that was recovered during the collection of the rape kit because the pubic hair could not be found and a chain of custody could not be established. This Court upheld this ruling because the hair was not available for testing. *Id*.[3]

This Court also upheld the trial court's determination that Swearingen had filed the Chapter 64 motion to unreasonably delay his execution. *Id*. at 736. Furthermore, the Court detailed, in twenty-five bullet points, the evidence supporting its conclusion that, even if the DNA test results were favorable as to the items that had been requested for testing in that motion, Swearingen was unable to show by a preponderance of the evidence that he would not have been convicted. *Id*. at

---

[3]Swearingen's present motion does not request DNA testing on (8) the foreign pubic hair that this Court determined in *Swearingen I* had been lost, and, therefore, I do not discuss that item any further in this opinion.

736-38.

**B. The Third Motion Addressed in *Swearingen II***

In response to the Legislature's amendment of Chapter 64 in 2011, Swearingen filed another motion seeking DNA testing in 2013. His motion sought to have DNA testing performed on several pieces of evidence: (1) the ligature, (2) the other leg of pantyhose, (5) the fingernail scrapings, (6) the cigarette butts, and (7) the victim's clothing. In support of his motion, Swearingen attached an affidavit, dated January 2013, by Huma Nasir, a forensics supervisor at Orchid Cellmark, Inc. The State responded that the doctrine on the law of the case applied and, on that basis, it argued that Swearingen's motion for DNA testing should be rejected.

The trial court granted the motion in June 2013, thereby ordering DNA testing to proceed, and it made findings of fact and conclusions of law supporting that order. After the State appealed, this Court reversed the trial court's order. *State v. Swearingen*, 424 S.W.3d 32 (Tex. Crim. App. 2014) (*Swearingen II*). This Court explained that it had reviewed the requests discussed in *Swearingen I* with respect to (1) the ligature, (5) the fingernail scrapings, and (7) the victim's clothes. *Id*. at 36. This Court stated, "Although the law has been amended, these amendments did not affect all of our previous determinations. In the instances where the amendment did not impact our analysis, the trial court erred by failing to adhere to our previous determinations." *Id*.

This Court noted that, since Swearingen's previous round of DNA requests, the Legislature's amendments changed Chapter 64 in two major ways. *Id*. First, the Legislature added a definition of "biological material," which specifies that certain items, such as fingernail scrapings, are per se biological material. *Id*. at 37. Second, the Legislature eliminated a requirement that the lack of previous testing had not been the convicted person's fault. *Id*. In examining the meaning of these

amendments, this Court initially observed, as it had in *Swearingen I*, that a movant for DNA testing is required to demonstrate that the evidence contains biological material. *Id.* The Court further said, "No part of the amendments addresses a method for determining the existence of biological material." *Id*. The Court expressly noted that Swearingen had the burden to "prove biological material exists and not that [its existence] is merely probable." *Id*. at 38.

As to the particular items that Swearingen sought to be tested, this Court held that he had failed to show the existence of biological material in the case of (1) the ligature, (2) the pantyhose, (6) the cigarette butts, and (7) the victim's clothing. *Id*. This Court reasoned that, although Swearingen had presented Nasir's affidavit indicating that touch DNA would "likely" be contained on those items, a mere probability of the existence of biological material was inadequate to satisfy his burden under the statute. *Id.* at 38. In light of the absence of new evidence in *Swearingen II* that would show that these items contained biological material, this Court reached the same conclusion as in *Swearingen I*, in which this Court had held that the lack of evidence of biological material required Swearingen's motion to be rejected. *See id.* at 37-38; *Swearingen I*, 303 S.W.3d at 733. This Court determined that the law-of-the-case doctrine applied, and it was bound to its former analysis and ruling denying the testing as to these particular items. *Swearingen II*, 424 S.W.3d at 37-38.

As to (5) the fingernail scrapings, this Court held that the law-of-the-case doctrine did not apply because the amended statute defined fingernail scrapings as biological material per se, and, therefore, Swearingen did not need to show that they contained biological material. *Id*. at 38. Nonetheless, this Court ruled that Swearingen was not entitled to DNA testing as to the fingernail scrapings. *Id*. at 38-39. It reasoned that, even if exculpatory results were obtained, "the victim's

having encountered another person would not factually exclude [Swearingen] from having killed her," in light of the fact that "[t]here are many ways someone else's DNA could have ended up in the victim's fingernails." *Id.* It further observed that the jury was already aware that an unidentified male's DNA was found under the victim's fingernails, and, therefore, any additional similar exculpatory results would not have likely changed the jury's verdict in light of the "mountain of evidence" showing Swearingen's guilt. *Id.* at 39 ("If the jury already knew of exculpatory results obtained from under the victim's nails and disregarded them, we have no reason to believe that it would be any different with regards to the remainder of the fingernail scrapings."). This Court reversed and remanded for proceedings in accordance with its opinion.[4] *Id.*

### C. This Court's Instant Majority Opinion: After Remand from *Swearingen II*

After this Court's remand order, Swearingen supplemented his motion by requesting DNA testing on items that he had previously requested to have tested, and he additionally sought DNA testing on certain items for the first time. He explained that "each item was either not previously tested or can now be tested with much more sensitive technology that will produce more robust results." Specifically, the first-time requests are for testing of (3) the hairs, including hair recovered from the victim's body and clothing, hairs on the ligature and pantyhose, hair recovered from gloves used to move the body, and hair recovered from a hairbrush found near the victim's body, and (4)

---

[4]Our remand in *Swearingen II* was for proceedings in accordance with the opinion, and the purpose of the remand is unclear. Swearingen asserts that the remand was to permit him the opportunity to obtain a revised affidavit from the expert and to submit new requests for testing. The State understands the remand to have been for the trial court to enter an order denying the motion for DNA testing and setting an execution date. It would have been unnecessary either (1) to remand the case for a denial order because that would be done through rendition of a judgment by this Court, or (2) to remand for the setting of an execution date, which is unrelated to a DNA motion. Swearingen's theory thus presents the only plausible rationale for this Court's remand order.

the rape kit. In response, the State argued that the law-of-the-case doctrine should apply to this case in its entirety.

## II. The Doctrine on the Law of the Case is Inapplicable to the Requests for DNA Testing on (2) the Pantyhose, (3) the Hair Evidence, (4) the Rape Kit, and (6) the Cigarette Butts

The doctrine on the law of the case is inapplicable to four of Swearingen's requests. Swearingen now presents additional evidence in support of his claim that (2) the pantyhose and (6) the cigarette butts contain biological material, and he includes first-time requests for testing on (3) the hair evidence and (4) the rape kit, neither of which was before this Court in *Swearingen I* or *Swearingen II*. Because the facts are not virtually identical, the law-of-the-case doctrine is inapplicable to these requests.

The law-of-the-case doctrine is designed to promote consistency and efficiency so that trial courts may rely upon the holdings of reviewing courts. *Carroll v. State*, 101 S.W.3d 454, 461 n. 35 (Tex. Crim. App. 2003). It is only applicable if "the facts and legal issues are virtually identical . . . [so that] they should be controlled by an appellate court's previous resolution." *Swearingen II*, 424 S.W.3d at 36. For the law-of-the-case doctrine to control this case, the evidence would have to show that the applicable DNA statute, the items sought to tested, and the evidence relevant to the motion are virtually identical. *See id*.

Here, the applicable DNA statute permits a convicted person to "submit to the convicting court a motion for forensic DNA testing of evidence containing biological material." TEX. CODE CRIM. PROC. art. 64.01 (a–1). This motion may request testing of evidence that was secured in relation to the offense comprising the underlying conviction and was in the possession of the State during the trial but either was not previously tested or, although previously tested, can be tested with

newer techniques which can provide more accurate and probative results. *Id*. A convicting court may order testing if the evidence in question (1) still exists and is in a condition making DNA testing possible; (2) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and (3) identity was or is an issue in the case. *Id*. art. 64.03(a)(1). Further, the convicted person has the burden of showing by a preponderance of the evidence that he "would not have been convicted if exculpatory results had been obtained through DNA testing" and that the request for testing is not made to unreasonably delay the execution of sentence. *Id*. art. 64.03(a)(2).

Swearingen's present motion for DNA testing includes requests for testing of the following items: (A) (1) the ligature, (2) the pantyhose, (6) the cigarette butts, and (7) the victim's clothing; (B) (3) the recovered hair samples; and (C) (4) the rape kit. Swearingen also requests testing of (5) the fingernail scrapings, which I discuss in Section D. Section D addresses the State's theory that the doctrine on the law of the case broadly applies to bar DNA testing in this case because of this Court's characterization in *Swearingen I* and *Swearingen II* that there is a mountain of evidence that shows Swearingen's guilt for this offense.

### A. (1) The Ligature, (2) The Pantyhose, (6) The Cigarette Butts, and (7) The Victim's Clothing

In *Swearingen II*, this Court held that Swearingen had failed to provide evidence to show that there would be DNA on (1) the ligature, (2) the pantyhose, (6) the cigarette butts, and (7) the victim's clothing, and, here, he requests DNA testing as to the same items. *Swearingen II*, 424 S.W.3d at 38. This time, however, he has produced a new affidavit from his DNA expert, Huma Nasir, in which she reports that biological material is present on these items. She states, "It is my opinion to a

reasonable degree of scientific certainty that biological material is present on [(1) the ligature, (2)

the pantyhose, (6) the cigarette butts, and (7) the victim's clothing]." No affidavit from Nasir was

presented in *Swearingen I*. And Nasir's former affidavit in *Swearingen II* more equivocally stated,

> Thus the pantyhose was probably handled by the assailant with some force and likely contains his biological material that is suitable for DNA testing. . . . Biological material from any wearer of this pantyhose and anyone who tore the pantyhose is likely to be detected on this item using modern DNA testing. . . . Where there has been such obvious and forceful contact with the victim's clothing, the biological material of the victim and the perpetrator is likely to be deposited on the clothing. . . . Because cigarettes are both manually handled and placed in a person's mouth, skin cells and epithelial cells from saliva were likely deposited on the cigarettes, rendering them suitable for DNA analysis. . . .

Upon Swearingen's request after this Court's remand in *Swearingen II*, Nasir supplemented her

affidavit to more clearly articulate her scientific position that we now consider in the instant case.

The new affidavit states,

> In my prior affidavit, I discussed the concept of "touch DNA" and explained that DNA profiles can be obtained from microscopic amounts of skin cells left by a person who has touched or handled an object. I provided my expert opinion that the objects identified in this case would "likely" contain biological material suitable for testing. By "likely," I meant that it is at least more likely than not that evidence in this case would contain biological material. . . . I have now been asked to provide a more precise opinion regarding the scientific likelihood that biological material is present on the objects identified for testing in this case. . . . It is my opinion to a reasonable degree of scientific certainty that biological material is present on the items. . . .

Because the facts before us are different in light of the new evidence of the presence of biological

material based on a never before considered affidavit, the law-of-the-case doctrine ordinarily would

be inapplicable in the resolution of this matter. Here, however, as I explain in Section D below, the

doctrine controls this case with respect to (1) the ligature and (7) the clothing because this Court's

analysis in *Swearingen I* held that, even if exculpatory results were obtained as to those items, that

evidence would not overcome the weight of the evidence establishing Swearingen's guilt. As to (2) the pantyhose and (6) the cigarette butts, I conclude, as explained in Section D below, that those items are not controlled by the doctrine on the law of the case.

### B. (3) The Hair Evidence

The DNA testing on the hair evidence requested in the instant proceedings was never before requested in the motions discussed in *Swearingen I* or *Swearingen II,* or in any other motion for DNA testing. In his supplemented Chapter 64 motion, Swearingen requests testing of certain hair collected from the victim's clothing, hair recovered from the victim's body, and hair recovered from a hairbrush found near the victim's body. These are entirely new requests that we have not previously ruled upon, so the doctrine on the law of the case does not govern our disposition of his motion for testing as to these pieces of evidence. The State contends that none of this hair is in an appropriate condition for testing because it has not been determined that the roots are intact. However, Nasir's affidavit states, "Mitochondrial DNA testing can also be conducted on the shaft of the hair(s) without roots. Although mitochondrial DNA profiles are not CODIS eligible, results can be used for exclusion purposes and to compare against known samples."

Further, the Legislature's 2011 amendments to Chapter 64 included a definition of biological material. The statute was amended to define biological material as follows: "(a) In this section, 'biological material': (1) means an item that is in possession of the state and that contains blood, semen, hair, saliva, skin tissue or cells, fingernail scrapings, bone, bodily fluids, or other identifiable biological evidence that may be suitable for forensic DNA testing; and (2) includes the contents of a sexual assault evidence collection kit." TEX. CODE CRIM. PROC. art. 64.01(a). The previous version

of the statute did not define the term biological material. According to the amended statute, the hairs collected are, by definition, biological material, so Swearingen has met his burden of proof as to the hairs. I would hold that the law-of-the-case doctrine is inapplicable to the instant requests for DNA testing on (3) the hairs.

**C. (4) The Rape Kit**

Swearingen did not request DNA testing of the rape kit in *Swearingen I* or *Swearingen II*, or in any other motion for DNA testing. The law of the case, therefore, cannot apply to his request for testing as to that item. Surprisingly, it appears that the rape kit has never been tested at all. The rape kit apparently was not tested because the Texas Department of Public Safety reported that no semen was detected. However, Nasir's affidavit states that the rape kit should still be tested. She states, "I am aware of a number of cases in which a lab failed to detect semen but a foreign DNA profile was detected nonetheless. This may be due to levels of semen too low to be detected by the methodology employed, poor laboratory testing processes, or foreign DNA from biological material other than spermatazoa (such as epithelial cells)." The capabilities for DNA testing from fifteen years ago have changed considerably as compared to what is scientifically possible today. Further, like the hair evidence, the rape kit is biological material according to the statutory definition. So, the law-of-the-case doctrine cannot apply to the rape kit, at least regarding the requirement that Swearingen must prove the existence of biological material. I would hold that the law-of-the-case doctrine is inapplicable to the instant request for DNA testing on (4) the rape kit.

**D. Applicability of the Law-of-the-Case Doctrine to Certain Items**

It is a fallacy to suggest that, because this Court, in *Swearingen I* and *Swearingen II*, referred

to the evidence of guilt in this case as constituting a mountain of evidence when comparing it to Swearingen's requests for DNA testing of certain items, namely (1) the ligature, (5) the fingernail scrapings, and (7) the victim's clothing, the same analysis of the evidence must identically apply to the requests for DNA testing on (2) the pantyhose, (3) the hairs, (4) the rape kit, and (6) the cigarette butts. I conclude, as explained below, that the law-of-the-case doctrine is inapplicable to the requests for DNA testing on (2) the pantyhose, (3) the hairs, (4) the rape kit, and (6) the cigarette butts because this Court has never weighed the probative value of favorable findings from that testing against the weight of the incriminating evidence establishing Swearingen's guilt.

In *Swearingen I*, we held that the mountain of evidence was so large that "even if we were to grant [Swearingen's] request to test all of the items proffered [he] cannot show by a preponderance of the evidence, or that there is a 51% chance, that he would not have been convicted." *Swearingen I*, 303 S.W.3d at 736. That analysis pertained to (1) the ligature, (5) the fingernail scrapings, and (7) the victim's clothing. Because this Court in *Swearingen I* has already weighed the exculpatory value of favorable DNA evidence that might be obtained from those items, this Court today is bound by the law-of-the-case as to those items.

Our ruling in *Swearingen II* assessed only the probative value of exculpatory fingernail scrapings, and therefore, our analysis on the comparative weight of that evidence against the evidence of Swearingen's guilt is limited to that item. There, we said, "We are not persuaded that results showing the presence of another DNA donor in the fingernail scrapings would overcome the 'mountain of evidence' of the appellee's guilt." *Swearingen II*, 424 S.W.3d at 38. We ruled this way because only the fingernail scrapings were left after we disposed of the other evidence under

the law-of-the-case doctrine.

Unlike the items in *Swearingen I* and *Swearingen II*, this Court has never weighed the evidence of Swearingen's guilt against any exculpatory DNA evidence that might be obtained from testing on (2) the pantyhose, (3) the hairs, (4) the rape kit, or (6) the cigarette butts. The law-of-the-case doctrine, therefore, is inapplicable as to those items.

The following chart visually demonstrates my conclusions with respect to the items to which the law-of-the-case doctrine applies and those to which it does not apply:

| Requested Items for DNA Testing | *Swearingen I* 2008/2009 Motion | *Swearingen II* 2013 Motion | Current 2013 Motion on Remand |
|---|---|---|---|
| (1) The Ligature and (7) The Clothing | No evidence shows that the items contained biological material. Alternatively, the probative value of any exculpatory results would not overcome the mountain of evidence. | Court applied law-of-the-case doctrine to the failure to show that the items contained biological material. | The law-of-the-case doctrine applies based on the finding in *Swearingen I* that the probative value of the items would not overcome the incriminatory evidence. |
| (2) The Pantyhose and (6) The Cigarette Butts | | No evidence shows that this item contained biological material. | The law of the case does not apply because the new affidavit shows that this item does contain biological material. |
| (3) The Hairs and (4) The Rape Kit | | | The law of the case does not apply because these are newly requested items that are per se biological material. |
| (5) The Fingernail Scrapings | No evidence shows that then-existing technology could not yield probative results. Alternatively, the probative value of any exculpatory results would not overcome the mountain of evidence. | New statute defined this item as a biological material, but exculpatory results from this testing would not have changed the outcome of the trial. | The law-of-the-case doctrine applies based on finding that the probative value of exculpatory test results would not overcome the incriminatory evidence. |

### III. Swearingen Meets all the Requirements for DNA testing on the Hair Evidence and the Rape Kit, But He Does Not Meet the Requirements for Testing of the Pantyhose or the Cigarette Butts

Having determined that the law-of-the-case doctrine applies to disallow testing of all of the items except for four items, I explain why the requirements of Chapter 64 are met with respect to (3) the hair evidence and (4) the rape kit, but not as to (2) the pantyhose or (6) the cigarette butts. Chapter 64 requires that the evidence contain biological material, that it is in a condition to be tested, that identity was an issue at trial, that the defendant would not have been convicted if favorable results had been obtained by DNA testing, and that the convicted person is not filing the motion to unreasonably delay execution. TEX. CODE CRIM. PROC. art. 64.03.

#### A. The Hair Evidence and the Rape Kit

All of these requirements are met in this case for the hair evidence and the rape kit. As discussed above, the applicable statute now defines the hair evidence and rape kit as per se biological material. *See id.* art. 64.01(a). The convicting court made a finding of fact that the hair evidence and rape kit remain in a condition to be tested, and the record supports that determination. On appeal, the State has presented a minimal challenge to the testing of these items, stating that the "existence of a sexual assault collection kit and hairs found on Ms. Trotter's clothing has always been known to the parties, and [Swearingen] could have requested DNA testing of those items at any time." But a defendant's failure to request testing of an item earlier is no longer a part of the applicable statute, and it can no longer constitute a basis for rejecting a request for testing. *Swearingen II*, 424 S.W.3d at 37. I would defer to the convicting court's fact finding that the items remain available in a suitable condition for testing.

A movant must show that identity was an issue at trial. No one disputes that Swearingen meets this requirement.

With respect to the requirement that he show by a preponderance of the evidence that he would not have been convicted if favorable DNA results from the items that he now requests be tested had been obtained at trial, I conclude that Swearingen satisfies this requirement as to the hairs and the rape kit. *See* TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A). This Court's majority opinion suggests that, because our opinions in *Swearingen I* and *Swearingen II* held that Swearingen could not overcome the mountain of evidence in those appeals, it necessarily follows that he would be similarly unable to do so here. But, as explained above, the items requested in *Swearingen I* and *Swearingen II* are not the same as the ones requested here. It is true that this Court's previous rulings have detailed the mountain of evidence against Swearingen in holding that exculpatory DNA results would not have made a difference in his conviction. But a DNA test from a rape kit conclusively showing that the victim had sexual intercourse with another male within a few hours of her murder, and DNA results showing that hair on and near her body belonged to another person, when viewed in combination with the evidence that was introduced at Swearingen's trial that the complainant had another person's DNA under her fingernails, would establish by a preponderance of the evidence that the jury would have acquitted him. It should not be forgotten that the mountain of evidence is circumstantial in nature, with the exception of the testimony of a jailhouse snitch and a letter written by Swearingen with details of the crime that, according to him, were in the autopsy report. The most incriminating circumstantial evidence linking Swearingen to violence against Trotter is the evidence that the pantyhose remnant found in his trailer, which had DNA from his wife and him, matched the

other part of the pantyhose that was used as the ligature to kill Trotter, and police recovered from inside his truck two hairs matching Trotter's DNA profile that appeared as if they had been forcibly removed. I agree that all of the circumstantial evidence introduced by the State at Swearingen's trial strongly connects him to Trotter at some point prior to her death, and it is powerful evidence of Swearingen's guilt. But its persuasive value would be greatly undermined by new DNA evidence indicating that the rape kit and the hairs found on and near the victim's body contained a DNA profile inconsistent with Swearingen's DNA profile, particularly when fingernail scrapings also did not match Swearingen's DNA profile.[5]

Finally, Chapter 64 requires that the movant show "by a preponderance of the evidence that the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice." *Id.* art. 64.03(a)(2)(B). In *Swearingen I*, this Court upheld the trial court's determination that his motion was filed for purposes of delay. However, under the statute as it existed then, it was permissible to hold it against the defendant that he had not sought testing of the items earlier. *Swearingen I*, 303 S.W.3d at 736. Under the amended statute that applies here, it is improper to consider a defendant's failure to request the testing sooner. Furthermore,

---

[5] I note here that, even though DNA consistent with Swearingen's and his wife's DNA profiles were found on the pantyhose leg in their trailer, and even though DNA consistent with the victim's DNA profile was found in Swearingen's truck, we know from current statistical problems relating to DNA-mixture interpretation that even these results are fallible. In a circumstantial case such as this one, exculpatory results from the rape kit and hair evidence on and near the victim's body likely could affect the inferences made from the statistical probabilities of the profiles developed in the case. Furthermore, although there was testimony of a microscopic match between the leg of the pair of pantyhose in Swearingen's trailer and the ligature used to kill Trotter, that type of evidence seems reminiscent of bite-mark evidence that has recently been questioned, and its value would be significantly undermined by exculpatory results from the rape kit and hairs found on and near the victim's body.

unlike the situation before us in *Swearingen I*, here the convicting court has recommended DNA testing and has made a factual finding that Swearingen has not filed this motion for purposes of delaying his execution. I would defer to that determination and hold that Swearingen's current motion is not filed for purposes of delay.

### B. The Pantyhose and the Cigarette Butts

Although I conclude that the doctrine on the law of the case cannot be used as a proper basis for denying DNA testing on (2) the pantyhose and (6) the cigarette butts, I reach the same ultimate conclusion as this Court's majority opinion that DNA testing must be denied as to those items. Even if exculpatory results were obtained from the pantyhose, those results would not, by a preponderance of the evidence, show that the jury would have reached a different verdict in this case, in light of the fact that the pantyhose remnant was found in Swearingen's trailer, it contained DNA matching his and his wife's DNA profiles, and it matched the other part of the pantyhose that was used as the ligature to kill Trotter. Furthermore, even if exculpatory results were obtained from the cigarette butts, those results would not, by a preponderance of the evidence, show that the jury would have reached a different verdict in this case, given the testimony suggesting that the cigarette butts had been left by individuals who found the victim's body, and given that the victim's body was recovered after being outdoors for an extended period of time. In light of the slight probative value of any favorable results that might be obtained from testing on the pantyhose and the cigarettes, I cannot conclude that such results, by a preponderance of the evidence, would have affected the jury's decision, and thus I agree that testing is not required as to those items.

### IV. Conclusion

The horrific nature of this crime cries for justice against the guilty person, but that punishment has yet to occur, in part, because of the State's persistence in challenging the trial court's orders granting DNA testing in this case. Given that Swearingen will be executed for this crime, can anyone rationally argue that the rape kit and hairs should not be tested when there is only circumstantial evidence of guilt, even if it is a mountain of it, and testimony from a jailhouse snitch? I would hold that DNA testing should be conducted on the rape kit and hair evidence. Therefore, I respectfully dissent from the Court's reversal of the trial court's order granting Swearingen's motion for post-conviction DNA testing.

Filed: October 28, 2015

Publish